**Charles M. McCARTHY, Jr.,
Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration,\*
Defendant–Appellee.**

No. 98–15238.

United States Court of Appeals,
Ninth Circuit.

Argued March 9, 1999

Submission Deferred March 9, 1999

Submitted June 9, 2000

Filed Aug. 15, 2000

---

\* Kenneth S. Apfel, Commissioner of the Social Security Administration, is substituted for his predecessor in office, Shirley S. Chater, pursuant to Fed. R.App. P. 43(c)(1).

James Reyer, Sparks, Nevada, for the plaintiff-appellant.

Donna Wade Anderson and John N. Carvelas (argued), United States Social Security Administration, San Francisco, California, for the defendant-appellee.

Before: O'SCANNLAIN and WARDLAW, Circuit Judges, and BYRNE, District Judge.**

BYRNE, Senior District Judge:

Appellant Charles M. McCarthy, Jr. ("McCarthy") appeals from the district court's decision on summary judgment (1) upholding the Commissioner of Social Security's determination that McCarthy was overpaid $10,207.00 in disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and (2) remanding the case to the Commissioner pursuant to 42 U.S.C. § 405(g) for a determination of whether McCarthy was "without fault" in connection with the overpayments. The district court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

## STATEMENT OF FACTS

McCarthy stopped working in 1980 due to a psychological disability and began receiving Title II disability insurance benefits,[1] as well as Title XVI supplemental security income, based on an application filed on January 8, 1981. McCarthy returned to work in December 1987, and his Title XVI supplemental security income ended two months later. McCarthy, however, allegedly continued to receive and cash Title II disability benefits through March 1990.

By letters dated January 25 and February 12, 1990, the Social Security Administration ("SSA") notified McCarthy that he was able to perform substantial gainful

---

** Honorable Wm. Matthew Byrne, Jr., Senior District Judge for the Central District of California, sitting by designation.

1. Under Title II of the Social Security Act, the *federal government provides disability benefits* to individuals who have contributed to the Social Security program and who, because of a medically determinable physical or mental impairment, are unable to engage in substantial gainful work. 42 U.S.C. §§ 423(a), (d). Title II is administered in conjunction with state welfare agencies and provides benefits only while an individual's statutory disability persists. 42 U.S.C. §§ 421(a), 423(a)(1).

activity as of December 1987, and that his eligibility for Title II disability benefits had ended in February 1988. By letter dated April 1, 1990, the SSA notified McCarthy that he had been overpaid $10,207.00 in Title II disability benefits for the period from March 1988 through March 1990. McCarthy's appeal of this initial determination and request for a waiver of recovery of the overpayment was partially denied on reconsideration after a personal conference with the SSA.[2] On June 30, 1995, following an administrative hearing, McCarthy's request for waiver of recovery was denied by an Administrative Law Judge ("ALJ").

The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to review it on November 22, 1996. McCarthy then sought judicial review pursuant to 28 U.S.C. § 1331 and as "alleged under" 42 U.S.C. § 405(g). On cross-motions for summary judgment, the district court found that McCarthy had been overpaid $10,207.00 in Title II disability benefits during the period from March 1988 through March 1990. However, the district court reversed the Commissioner's determination that McCarthy was at fault for the overpayments and remanded to the Commissioner for a full and fair hearing on the question of fault. McCarthy timely appealed.[3]

## STANDARD OF REVIEW

"The basis for the district court's jurisdiction and the grant of summary judgment are reviewed de novo." *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 755 (9th Cir.1992), *amended by* 985 F.2d 1419 (9th Cir.1993). The Commissioner's factual findings are reviewed for substantial evidence. *See* 42 U.S.C. § 405(g).

**2.** McCarthy subsequently repaid $350, and another $539.20 was recovered, leaving a balance of $9,367.80.

**3.** In *Forney v. Chater*, 108 F.3d 228 (9th Cir. 1997), we held that a remand pursuant to the Social Security Act is not appealable. After the Supreme Court granted certiorari in that

## DISCUSSION

The Social Security Act includes the following statutory scheme for adjustment or recovery of benefits as a result of an overpayment:

> With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds ..., or shall apply any combination of the foregoing.

42 U.S.C. § 404(a)(1)(A). However, "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." *Id.* § 404(b).

## I

### Jurisdiction

McCarthy first claims that the district court erred in basing its jurisdiction over his action on 42 U.S.C. § 405(g). Importantly, McCarthy does not dispute that the district court had jurisdiction, nor does he dispute this court's jurisdiction on appeal. McCarthy instead seeks a ruling that the district court could not exercise jurisdiction under § 405(g) until the Commissioner showed that McCarthy had, in fact,

case, the Commissioner obtained a stay of proceedings of the present case pending a decision by the Supreme Court in *Forney*. The Supreme Court subsequently reversed our ruling in *Forney*, *see* 524 U.S. 266, 118 S.Ct. 1984, 141 L.Ed.2d 269 (1998), thus rendering the district court's remand order in the present case final and appealable.

received overpayments of Title II disability benefits between March 1988 and March 1990, the period for which the Commissioner seeks recoupment. Absent such a showing, McCarthy contends, review can only have been proper under general federal question jurisdiction, 28 U.S.C. § 1331.

The importance of this jurisdictional determination is two-fold. First, if, as McCarthy contends, jurisdiction under § 405(g) is not proper until the Commissioner proves the fact of overpayment, then the Commissioner bears the burden of proving overpayment by a preponderance of the evidence, rather than by "substantial evidence" as set out in § 405(g). Second, if the district court's jurisdiction did not arise under § 405(g), then the court may have been without authority to remand the case to the Commissioner.[4]

Section 405(g) provides a jurisdictional basis for review of a final decision of the Commissioner denying a waiver of recovery of an overpayment of Title II disability benefits. Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days.... Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides....

42 U.S.C. § 405(g).

In *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Supreme Court described the general steps a Title II recipient must take to obtain review of an alleged overpayment:

> The [Commissioner's] practice is to make an *ex parte* determination under [42 U.S.C. § 404(a)] that an overpayment has been made, to notify the recipient of that determination, and then to shift to the recipient the burden of either (i) seeking reconsideration to contest the accuracy of the determination, or (ii) asking the [Commissioner] to forgive the debt and waive recovery in accordance with [§ 404(b)]. If a recipient files a written request for reconsideration or waiver, recoupment is deferred pending action on that request. The papers are sent to one of seven regional offices where the request is reviewed.
>
> If the regional office decision goes against the recipient ... [the recipient is] given an opportunity to present his story in person to someone with authority to decide his case. That opportunity takes the form of an on-the-record *de novo* evidential hearing before an independent hearing examiner. The recipient may seek subsequent review by the Appeals Council, and finally by a federal court [under § 405(g)].

*Id.* at 686–87, 99 S.Ct. 2545 (footnote and citations omitted). McCarthy went through each of the early steps described in *Yamasaki* for seeking reconsideration of the initial overpayment determination. He filed a request for waiver, presented his story to an ALJ, and sought subsequent review by the Appeals Council. McCarthy disputes, however, that the final step—judicial review under § 405(g)—was available in his case.

■ Reduced to its essence, McCarthy's argument is that judicial review is only available under § 405(g) if the Commissioner first proves that the plaintiff in the district court action was, at the time of the ALJ's decision, (1) a Social Security claimant (2) who received overpayments of Title II disability benefits during the period in question. McCarthy claims that, because the Commissioner presented no evidence that he was a Social Security claimant at the time of the ALJ's decision or that he received overpayments from March 1988

---

4. Section 405(g) provides in pertinent part that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

to March 1990, his action to enjoin the Commissioner from recouping the alleged overpayments cannot be construed as an action for review of a final decision of the Commissioner pursuant to § 405(g).

■ McCarthy's first argument, that jurisdiction cannot have arisen under § 405(g) as he was not a Social Security "claimant" at the time of the ALJ's decision, borders on frivolous.[5] Nothing in the Social Security Act indicates that an individual must be requesting or receiving benefits at the time of the ALJ's decision in order to seek judicial review under § 405(g). Indeed, § 405(g) provides that "any individual" who is party to a Social Security hearing may obtain judicial review of the Commissioner's ruling.

In any event, McCarthy does not deny that he was a Social Security claimant in 1981 when he filed for Title II disability benefits, and McCarthy remains a "claimant" with respect to the Commissioner's efforts to recover alleged overpayments on that claim. That McCarthy was not asserting a continuing right to disability benefits in 1995 did not destroy his status as a "claimant" with respect to the Title II disability benefits for which he applied in 1981 and from which the Commissioner seeks recoupment of overpayments.

■ McCarthy's second argument, that jurisdiction cannot have arisen under § 405(g) unless the Commissioner first proved by a preponderance of evidence that McCarthy received overpayments during the relevant period, also fails. To recover overpayments, the Commissioner must show that the claimant actually received benefits beyond the period of disability or in excess of the correct amount. *See* 42 U.S.C. § 404(a). However, the Commissioner's alleged failure to make these showings does not render judicial

review under § 405(g) improper. Rather, the district court, on judicial review, must determine whether the Commissioner established the fact and amount of overpayments by substantial evidence. In other words, proof of an overpayment is a requirement for recovery, not a prerequisite to judicial review.[6]

We therefore hold that the district court properly exercised jurisdiction over McCarthy's action pursuant to 42 U.S.C. § 405(g).

## II

### Substantial Evidence

In the usual overpayment case, a claimant does not contest the fact or amount of the overpayments. Rather, the claimant typically contests only the Commissioner's determination that he was not "without fault" for receiving the overpayments and, consequently, that he is not entitled to a waiver of recovery. Here, however, McCarthy contests both the fact and amount of the alleged overpayments and claims that the district court erred in affirming the Commissioner's finding that he received $10,207.00 in overpayments during the period from March 1988 to March 1990.

■ Although the Social Security Act does not designate which party bears the burden of establishing the fact and amount of overpayments, each circuit to consider the issue has held that the Commissioner has this burden. *See Cannuni ex rel. Cannuni v. Schweiker,* 740 F.2d 260, 263 (3d Cir.1984); *United States v. Smith,* 482 F.2d 1120, 1124 (8th Cir.1973). We join these circuits and hold that the Commissioner bears the burden of proving the fact and amount of overpayment. The Commissioner must establish: (1) that McCarthy received Title II disability benefits

---

**5.** "Claimant" is defined as "the person who files an application for benefits for himself or herself or the person for whom the application is filed." 20 C.F.R. § 404.602.

**6.** Indeed, it would make little sense for the district court to require the Commissioner to

prove the fact of overpayments by a preponderance of the evidence and then, having triggered § 405(g), review this very same factual determination under the less stringent substantial evidence standard of proof.

from March 1988 to March 1990; (2) that these benefits were in excess of the amount to which McCarthy was entitled; and (3) that the overpayment was in the amount of $10,207.00.

Because jurisdiction arose under 42 U.S.C. § 405(g), the district court properly reviewed for "substantial evidence" the Commissioner's determination that McCarthy had been overpaid benefits in the amount of $10,207.00. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."). Substantial evidence is such relevant evidence as a reasonable mind might, upon consideration of the entire record, accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Young v. Sullivan,* 911 F.2d 180, 183 (9th Cir.1990) ("Substantial evidence means 'more than a mere scintilla,' but 'less than a preponderance.'" (citations omitted)).

### A. Payment of Title II benefits

■ Payments of Title II benefits are generally proved by the Commissioner through computerized SSA payment records and canceled checks from the Treasury Department. Though the record in this case is devoid of any documentation showing that payments were actually made to McCarthy, the district court considered other evidence in finding that the Commissioner proved the payment of benefits after February 1988. The court first noted that McCarthy admitted in the April 1995 hearing before the ALJ that he received Title II disability payments after February 1988. The admission is clear in an exchange between the ALJ and McCarthy's attorney (the same attorney who represents McCarthy on appeal):

> ALJ: And do you know—do either of you know when the Title II benefits stopped.
>
> ATTY: I believe the last payment was in February or March of 1990 was the last payment.[7]

McCarthy's admission alone constitutes substantial evidence of payment.

■ Additionally, the district court found that McCarthy had also tacitly admitted that he was paid benefits after March 1988 by making partial reimbursement of the overpaid amounts and by filling out a request for a waiver of recovery.[8]

The district court did not err in finding that the payment of Title II disability benefits to McCarthy during the period from March 1988 to March 1990 was supported by substantial evidence.

### B. Fact of overpayment

McCarthy concedes that by March 1988 he was able to perform substantial gainful activity, and that his benefits should have ceased at that time. Thus, proof of payment after 1988 and proof of overpayments are one and the same.

### C. Amount of overpayment

In addition to establishing that McCarthy received overpayments, the Commissioner must also prove by substantial evidence the amount of those overpayments.

7. At several points in his briefing, McCarthy contends that the ALJ never found that he had received benefits through March 1990. This contention is plainly refuted by the ALJ's finding that "claimant was overpaid benefits ... under Title II of the Social Security Act from March 1988 through March 1990."

8. McCarthy contends that the district court erred in relying on the above evidence because the hearing before the ALJ was a non-adversarial proceeding and because the ALJ improperly admitted evidence, including McCarthy's partial reimbursement of the overpayment amount due, that would not have been admissible under the Federal Rules of Evidence. The ALJ, however, was not bound by the rules of evidence applicable to court proceedings. 42 U.S.C. § 405(b) provides that "[e]vidence may be received *at any hearing* before the Secretary even though inadmissible under the rules of evidence applicable to court procedure. Courts have regularly found § 405(b) applicable in actions to recover overpayments of benefits." *See, e.g., Howard v. Secretary of the Dep't of Health and Human Servs.,* 741 F.2d 4, 9 (2d Cir.1984).

The only document in the record that identifies specific payments from March 1988 through March 1990 is an April 1, 1990 letter from the SSA to McCarthy that provided, in pertinent part:

We have determined that you received $10,207.00 more in Social Security benefits than you were due. This overpayment occurred because of your substantial gainful work activity. Benefits for you have terminated effectively March 1988. Please see chart below.

| You received: | You should have received: |
|---|---|
| $468.00 prior overpayment balance | $0.00 for 03/88—03/90 |
| $377.00 for 03/88—09/88 | |
| $376.80 for 10/88—11/88 | |
| $391.90 for 12/88—11/89 | |
| $410.90 for 12/89—03/90 | |

Therefore, you are overpaid $10,207.00.

■ When a claimant challenges the SSA's initial determination of the amount that he was overpaid, the Commissioner must present reliable evidence of the particular overpayments. The Commissioner's unsubstantiated belief that particular payments were made is not enough. The letter, standing alone, does not constitute substantial evidence of the amount of the overpayments. The district court erred in relying exclusively on this letter in rejecting McCarthy's challenge to the amount of overpayments.

Although canceled checks may be the best evidence of the amount of overpayment, see *Chitwood v. Chater*, 928 F.Supp. 874, 882 (E.D.Mo.1996), they are not the only evidence sufficient to satisfy the Commissioner's burden. The Commissioner could, for instance, subpoena a claimant's bank records to show the deposit of checks matching the claimed payments. Or the Commissioner might rely upon the claimant's own prior admissions that he received payments in the claimed amounts.

■ We do not endeavor to offer an exhaustive list of the types of evidence by which the Commissioner could satisfy his

burden. We simply hold that production of an initial determination letter is not enough and that, on remand, the Commissioner continues to bear the burden of establishing by substantial evidence the amount of the overpayments of Title II benefits to McCarthy.[9]

### III

### "Without Fault"

McCarthy's final contentions relate to the district court's decision to remand the case to the Commissioner for consideration of whether he was "without fault" with respect to the overpayments and, if so, whether reimbursement should be excused because it would defeat the purpose of Title II or would be against equity or good conscience. *See* 42 U.S.C. § 404(b).

■ The regulations provide that an overpaid individual may be found at fault if the overpayments resulted from: (1) an incorrect statement made by the individual that he knew or should have known to be incorrect; (2) failure to furnish information that he knew or should have known to be material; or (3) acceptance of a payment that he either knew or could have been expected to know was incorrect. *See* 20 C.F.R. § 404.507. The overpaid individual bears the burden of proving that he was without fault. *See Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir.1990).

■ McCarthy does not challenge the district court's finding that the Commissioner's determination of fault was not supported by substantial evidence. Rather, McCarthy asserts that remand for a further hearing on fault was improper. He first claims that both the ALJ and the district court were bound by the SSA's May 25, 1993 determination, following a personal conference, that McCarthy was without fault for overpayments made from February 1988 through December 1989. McCarthy argues that the ALJ could not

9. We grant McCarthy's motion to strike from the Commissioner's brief an addendum containing purported evidence of the amount of overpayments received by McCarthy between March 1988 and March 1990. These computerized records of planned or actual payments were not before either the ALJ or the district court and will not be considered by this court. *See* Fed. R.App. P. 10(a); 9th Cir. Rule 10–2.

revisit this issue without giving written notice in advance of the hearing, as required by 20 C.F.R. § 404.946(a).

McCarthy's argument hinges on a misreading of § 404.946(a), which provides:

> The issues before the [ALJ] include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in your favor. However, if evidence presented before or during the hearing causes the [ALJ] to question a fully favorable determination, he or she will notify you and will consider it an issue at the hearing.

20 C.F.R. § 404.946(a). Nothing in this section requires the ALJ to notify an individual prior to the hearing, or in writing, that an issue previously decided in his favor will be considered as an issue at the hearing. Indeed, § 404.946(a) expressly contemplates notification "at the hearing." 20 C.F.R. § 404.946(a); *see also Highfill v. Bowen*, 832 F.2d 112, 115 (8th Cir.1987) ("[Section] 404.946(a) provides that the ALJ may reexamine a favorable determination if evidence presented during the hearing calls the determination into question.").

■ McCarthy's second argument also fails. According to McCarthy, the record demonstrates that his average monthly expenses exceed his average monthly income and, consequently, that reimbursement would defeat the purpose of Title II or would be against equity or good conscience. However, the district court remanded the case to the ALJ for a hearing on the fault issue. There was no reason for the district court to address whether, in the event McCarthy is found to be without fault, repayment would defeat the purpose of Title II or would be against equity or good conscience.[10]

## CONCLUSION

For the foregoing reasons, we AFFIRM IN PART and REVERSE IN PART the district court's decision on summary judgment. The district court's exercise of jurisdiction is AFFIRMED, as is its finding that there was an overpayment. The case is REMANDED to the district court. Consistent with this opinion, the district court is to remand the case to the Commissioner to determine the amount of Title II disability benefits that McCarthy was overpaid. If the Commissioner determines that some amount of overpayment was shown by substantial evidence, the Commissioner shall proceed with a hearing concerning whether McCarthy was without fault with respect to that overpayment and, if he was without fault, whether reimbursement of the overpaid benefits should be excused because reimbursement would defeat the purpose of Title II or would be against equity or good conscience. Each side will bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

---

10. The Commissioner has not appealed the district court's decision to vacate the ALJ's fault determination and to remand for a full and fair hearing to determine whether McCarthy was without fault.